IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **MAKAYLA MARX,**<br><br>     Plaintiff,<br><br>v.<br><br>**GEORGIA DEPARTMENT OF CORRECTIONS, WARDEN WILLIAM DANFORTH, Individually and in his Official Capacity, and DEPUTY WARDEN CALVIN ORR, Individually and in his Official Capacity**,<br><br>     Defendants. | Civil Action No. 7:12-CV-92 (HL) |

### ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28). The Court has read and considered Defendants' motion and brief, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Doc. 31), and Defendants' Reply (Doc. 32). The Court has already ruled that Plaintiff's Seconded Amended Complaint (Doc. 14) will govern this case. (*See* Doc. 26). For the reasons stated below, Defendants' motion to dismiss is granted in part, and Plaintiff is ordered to revise her complaint.

### I.     MOTION TO DISMISS STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible if its factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. Twombly, 550 U.S. at 556.

In ruling on a motion to dismiss, the court must accept "all well-pleaded facts…as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, this tenet does not apply to legal conclusions in the complaint. Iqbal, 556 U.S. at 679. A court must dismiss the complaint if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Executive 100, Inc. v. Martin County, 992 F.2d 1536, 1539 (11th Cir. 1991) and Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed.2d 939 (1946)). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v.

Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). The court may not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II.   FACTUAL BACKGROUND

Construing the factual allegations in the complaint in favor of Plaintiff Makayla Marx ("Plaintiff"), Defendant Georgia Department of Corrections ("GDOC") hired Plaintiff on February 16, 2006, to work as a corrections officer at Valdosta State Prison. After being diagnosed with post-traumatic stress disorder ("PTSD") in February 2008, Plaintiff requested reasonable accommodations from GDOC for her work. Although placed on modified duty, Plaintiff was frequently questioned by Defendant Deputy Warden Calvin Orr ("Orr") about her health condition, appointments with medical providers, the duration of her illness, and similar topics.[1] Other individuals enjoyed uninterrupted time on modified duty, but when Plaintiff inquired about these positions, her requests were ignored. (Doc. 13, ¶10-14, 27). Instead, Plaintiff was placed on assignments in the prison that were not normally given to women. Orr accused Plaintiff of poor job performance and, on one occasion in January 2010, claimed she had abandoned her job post to smoke. (Doc. 13, ¶26, 33-34, 37).

Plaintiff brought her predicament to the attention of Orr's superiors, but her efforts backfired. Complaints in October 2008 fell on deaf ears. When Plaintiff

---

[1] Plaintiff also alleges that some of her medical records were disseminated to her co-workers, but she fails to allege who did this. (Doc. 13, ¶36).

complained to Defendant Warden William Danforth ("Danforth"), he supported Orr, and a letter of complaint filed with Danforth in February 2010 was equally fruitless. After Plaintiff began complaining about Danforth in addition to Orr, an investigation was begun, but the investigatory interview held in June 2010 was designed to intimidate Plaintiff.[2] Finally, to protect her physical and mental health, Plaintiff resigned from her job. (Doc. 13, ¶28, 31, 35, 38-39).

Seeking redress, Plaintiff brought this lawsuit in July 2012, naming as defendants Georgia Department of Corrections, Danforth in his official and individual capacities, and Orr in his official and individual capacities. Plaintiff alleges she suffered retaliation and discrimination in a hostile work environment in violation of Titles I and V of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff seeks relief under 42 U.S.C. §§ 1983 and 1988. (*See* Docs. 13 and 14). Plaintiff's complaint asks only for a monetary award for damages, not injunctive relief. (Doc. 13, ¶44).

### III. DISCUSSION

#### A. Plaintiff's ADA claims

Plaintiff alleges the Defendants, including Danforth and Orr in their individual capacities, violated the ADA. Specifically, Plaintiff claims Defendants

---

[2] Plaintiff fails to say whether Danforth and Orr participated in the interview.

violated Title I of the ADA by discriminating against her in the workplace on the basis of her disability and violated Title V by retaliating against her when she complained of the discriminatory treatment.

### 1. Title I claim against the GDOC and Danforth and Orr in their official capacities

Plaintiff's claim under Title I of the ADA against the GDOC and Danforth and Orr, in their official capacities, must be dismissed. In Board of Trustees of the University of Alabama v. Garrett, the Supreme Court of the United States held that Congress did not validly abrogate Eleventh Amendment immunity with its enactment of Title I because it lacked the constitutional authority to do so. 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Congress did not validly abrogate the immunity, for it failed to provide a compelling record of employment discrimination by the states against disabled individuals, as required by § 5 of the Fourteenth Amendment. Id. at 368. "The legislative history of the ADA, however, simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." Id.

In the present case, the Eleventh Amendment would bar Plaintiff, as a private individual, from seeking money damages from the State of Georgia through Title I. Id. at 374. Because the GDOC functions as "an arm of the state" and Danforth and Orr, in their official capacities, serve as state officials, they are also protected by Eleventh Amendment immunity. See Miller v. King, 384 F.3d

1248, 1260 (11th Cir. 2004) (holding that Eleventh Amendment immunity protected the GDOC from a § 1983 claim) (overruled on other grounds by Miller v. King, 449 F.3d 1149 (11th Cir. 2006)); Hobbs v. Roberts, 999 F.2d 1526, 1528 (11th Cir. 1993); Robinson v. Ga. Dep't of Transp., 966 F.2d 637, 638-39 (11th Cir. 1992); Ferguson v. Ga. Dep't of Corrections, 428 F. Supp. 2d 1339, 1352-53 (M.D. Ga. 2006). Plaintiff's Title I claim for monetary damages against these Defendants is dismissed.

### 2. Title V claim against the GDOC and Danforth and Orr in their official capacities

Because Eleventh Amendment immunity also extends to retaliation claims brought under Title V, Defendants' motion to dismiss Plaintiff's Title V claim against the DOC and Danforth and Orr in their official capacities is granted.

The Court agrees with the parties that no controlling authority has addressed the issue of whether Eleventh Amendment immunity extends to Title V retaliation claims. However, the Court is persuaded by, and adopts, the reasoning provided by various appellate and district courts concluding the Eleventh Amendment provides immunity from Title V retaliation claims based on alleged violations of Title I. *See, e.g.*, Lors v. Dean, _____ F.3d _____, 2013 WL 4017323, at *2-4 (8th Cir. 2013); Demshki v. Monteith, 255 F.3d 986, 988 (9th Cir. 2001); Merbach v. N.D. State Water Comm'n, No. 1:13-CV-030, 2013 WL 2252916, at *3 (D.N.D. May 22, 2013); Collazo-Rosado v. Univ. of P.R., 775 F.

Supp. 2d 376, 387 (D.P.R. 2011); Padilla v. N.Y. State Dep't of Labor, No. 09 Civ. 5291 (CM RLE), 2010 WL 3835182, at *4 (S.D.N.Y. Sep. 13, 2010); Shabazz v. Texas Youth Com'n, 300 F. Supp. 2d 467, 472-73 (N.D. Tex. 2003). The Court acknowledges, but is not persuaded by, the conclusion by other courts that Eleventh Amendment immunity does not apply to Title V claims. *See, e.g.*, Bylsma v. Haw. Pub. Hous. Auth., _____ F. Supp. 2d _____, Civ. No. 13-00228, 2013 WL 2947905, at *4 (D.Haw. June 13, 2013) (addressing retaliation claims predicated on violations of Title II); Villanueva-Cruz v. Puerto Rico, No. Civ. 10-2075, 2012 WL 1712691, at *6 (D.P.R. May 15, 2012).

The Eleventh Amendment generally protects states from suits brought in federal court by private individuals seeking money damages. *See* Green v. Mansour, 474 U.S. 64, 68-69, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Congress may remove this immunity only if it (a) unequivocally expresses an intent to do so and (b) acts pursuant to a valid grant of constitutional authority. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73, 78, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); Garrett, 531 U.S. at 363. Congress clearly intended to abrogate Eleventh Amendment immunity with regards to ADA claims, so the remaining question is whether removing immunity for Title V claims was in keeping with a valid grant of constitutional authority. *See* 42 U.S.C. § 12202; Garrett, 531 U.S. at 363-64.

Congress was not acting pursuant to a valid grant of constitutional authority when it sought to abrogate Eleventh Amendment immunity for Title V claims, at least when those claims are predicated on Title I violations. Congress may enforce the rights given in § 1 of the Fourteenth Amendment by passing legislation under the power granted by § 5. Garrett, 531 U.S. at 364-65. However, because "Congress' § 5 authority is appropriately exercised only in response to state transgressions," the legislative record for a law attempting to abrogate Eleventh Amendment immunity must show a historical pattern of state violations of the right in question. Id. at 368; *see also* City of Boerne v. Flores, 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). "There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled." Demshki, 255 F.3d at 989; *see also* Garrett, 531 U.S. at 368 ("[T]he ADA, however, simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled").[3] Because Congress' enactment of the ADA did not identify a pattern of irrational state

---

[3] Cases involving employment discrimination claims under Title II are also instructive. Although the Eleventh Circuit has yet to address whether employment discrimination claims under Title II would be barred by Eleventh Amendment immunity, a number of district courts in our circuit have ruled the immunity would apply because Congress failed to provide legislative findings of state employment discrimination for Title II. *See, e.g.*, Clifton v. Ga. Merit Sys., 478 F. Supp. 2d 1356, 1368 (N.D. Ga. 2007); Leverette v. Ala. Revenue Dep't, 453 F. Supp. 2d 1340, 1345 (M.D. Ala. 2006); Williamson v. Ga. Dep't of Human Res. & Ga. Reg'l Hosp., 150 F. Supp. 2d 1375, 1381-82 (S.D. Ga. 2001).

retaliation against those who oppose unlawful employment discrimination, the Court finds that Congress did not validly abrogate the states' Eleventh Amendment immunity for Title V claims predicated on Title I violations.

Reaching any other conclusion would be illogical when, as here, a plaintiff's Title V claim is predicated on a violation of Title I of the ADA. Title V forbids retaliatory discrimination against someone because that person has "opposed any act or practice made unlawful by this chapter or…made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Thus, liability under Title V is predicated on a violation of some other ADA title. Collazo-Rosada, 775 F. Supp. 2d at 384. Title V does not contain its own remedy or procedure of redress for a violation but only makes available the remedies and procedures found in the other titles. 42 U.S.C. § 12203(c); Collazo-Rosada, 775 F. Supp. 2d at 384.

In the present case, Plaintiff alleges that Defendants violated Title V by retaliating against her when she complained of employment discrimination based on her disability, a violation of Title I. (Doc. 13, ¶26, 33, 37-38). But the Supreme Court has already stated that states are immune to suits in federal courts brought by private individuals seeking money damages for violations of Title I. Garrett, 531 U.S. at 374. So allowing Plaintiff to proceed in a Title V suit for money

damages founded on an alleged violation of Title I would allow her to bypass the immunity Defendants would otherwise receive under the Eleventh Amendment.

Furthermore, decisions holding that Congress did provide a sufficient history of state discrimination to abrogate Eleventh Amendment immunity for certain Title II claims are inapplicable here. In Tennessee v. Lane, the plaintiffs alleged they had been denied access to state courts because of their disability in violation of Title II. 541 U.S. 509, 522-23, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). The Supreme Court determined that the alleged violations were subject to a "more searching judicial review" because they involved rights protected by the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment. Id. at 523. The Lane holding distinguished the Title II claims at issue there from the Title I claims addressed by Garrett that only implicated the Equal Protection Clause of the Fourteenth Amendment. Id. at 522. The ADA had validly abrogated Eleventh Amendment immunity with regards to the plaintiffs' Title II claims because Congress' legislative findings and recent judicial decisions demonstrated a pattern of state discrimination against the disabled in the provision of services and programs. Id. at 524-29. Thus, this Court is not compelled to apply the Lane reasoning to its analysis of Plaintiff's claims because they only concern Titles I and V and implicate rights guaranteed by the Equal Protection Clause.

Neither does the Eleventh Circuit's reasoning in <u>Association for Disabled Americans, Inc. v. Florida International University</u> apply to the present case. 405 F.3d 954 (11th Cir. 2005). The plaintiffs in <u>Florida International University</u> alleged that the school had violated Title II of the ADA on the basis of their disability by failing to provide them with necessary aids and services. <u>Id.</u> at 956. The court held that, even though "discrimination in education does not abridge a fundamental right, the gravity of the harm is vast and far reaching." <u>Id.</u> at 957-58. (citing <u>Brown v. Bd. of Educ.</u>, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954)). Furthermore, in deciding that Congress had properly abrogated the states' Eleventh Amendment immunity for Title II claims seeking equal access to higher education, the Eleventh Circuit pointed to a "long history" of state discrimination against the disabled in the educational arena. <u>Id.</u> at 958-59. The <u>Florida International University</u> holding is not binding for this Court because the Eleventh Circuit was concerned with access to education under Title II, not employment discrimination and retaliation under Titles I and V.

Therefore, the Court dismisses Plaintiff's claim for monetary damages under Title V of the ADA against Defendants GDOC and Danforth and Orr in their official capacities.

### 3. ADA claims against Danforth and Orr in their individual capacities

Plaintiff has brought claims under Titles I and V of the ADA against Danforth and Orr in their individual capacities as well. Defendants have moved to dismiss these claims and have cited to binding legal authority. Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Doc. 31) fails to respond to Defendants' argument for dismissing the ADA claims against Danforth and Orr in their individual capacities. Plaintiff has thereby abandoned these claims, and they are due to be dismissed. *See* Resolution Trust v. Dunmar, 43 F.3d 587, 599 (11th Cir. 1995) (affirming the dismissal of the plaintiff's claims at the summary judgment stage and stating "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); Lawson v. ADT Sec. Servs., Inc., 899 F. Supp. 2d 1335, 1337-38 (M.D. Ga. 2012) (granting the defendant's motion for judgment on the pleadings under Rule 12(c) for some claims because the plaintiff's response did not defend them). Even had Plaintiff responded, the Eleventh Circuit has clearly stated that state officials cannot be held liable in their individual capacities for violations of the ADA. *See* Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996). Accordingly, the ADA claims against the Defendants in their individual capacities are also dismissed.

### B.     Plaintiff's § 1983 claims

Alleging that the actions of Danforth and Orr violated her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has sued GDOC along with Danforth and Orr, in their official and individual capacities, under 42 U.S.C. § 1983.

#### 1. GDOC and Danforth and Orr in their official capacities

Plaintiff's § 1983 claims against the GDOC and Danforth and Orr in their official capacities fail because these Defendants are not "persons" as defined by that statute. Under § 1983, "[e]very person who, under color of statute," deprives a citizen of constitutional rights "shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. However, the Supreme Court of the United States has held that "a State is not a 'person' within the meaning of § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 65, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Nor are state officials acting in their official capacities subject to liability under § 1983, for they are also not "persons" as defined by that statute. Id. at 71.

Plaintiff's § 1983 claims against these Defendants must also be dismissed under the immunity provided by the Eleventh Amendment. The Eleventh Amendment provides immunity to states, state agencies functioning as an "arm of the state," and state officials acting in their official capacities against private claims for money damages brought in federal court. See Seminole Tribe of Fla. v.

Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Robinson v. Ga. Dep't of Transp., 966 F.2d 637, 638-39 (11th Cir. 1992). Congress may abrogate Eleventh Amendment immunity, but it has not done so for § 1983 claims. Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Danforth and Orr, in their official capacities, along with the GDOC are protected by Eleventh Amendment immunity from Plaintiff's § 1983 claims.

### 2. Danforth and Orr in their individual capacities

The Court next turns to the § 1983 claims brought against Danforth and Orr in their individual capacities. Defendants contend qualified immunity protects them from § 1983 liability and move to dismiss the claims on that basis. The Court finds that the factual allegations in Plaintiff's complaint and amended complaints are insufficiently clear to allow the Court to determine whether Defendants are entitled to qualified immunity. Therefore, Plaintiff is ordered to amend her complaint by October 4, 2013, for the sole purpose of answering with specificity the following questions:

1. How did Plaintiff's PTSD vocationally disable her?

2. What requests for reasonable accommodations did Danforth and Orr deny to Plaintiff? (*See* Doc. 13, ¶13-14). Were these same reasonable accommodations made for non-disabled employees at the prison?

3. Who are the "other parties" referred to in Paragraph 13 of Plaintiff's Amended Complaint (Doc. 13)? Were these "other parties" also employees at the prison? Were they disabled or not disabled?

4. Were only disabled employees required to work in the prison areas mentioned in Paragraphs 26 and 37 of Plaintiff's Amended Complaint (Doc. 13) or did non-disabled employees also work in those areas?

5. Did Danforth or Orr release Plaintiff's medical records referred to in Paragraph 36 of Plaintiff's Amended Complaint (Doc. 13)?

6. Did Danforth or Orr conduct the investigative interview referred to in Paragraph 38 of Plaintiff's Amended Complaint (Doc. 13)?

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss (Doc. 28) in part. Plaintiff's ADA claims are dismissed in their entirety, and her § 1983 claims against Defendants Georgia Department of Corrections and Danforth and Orr in their official capacities are also dismissed. Defendants Georgia Department of Corrections and Danforth and Orr in their official capacities are dismissed from this case. The Court delays ruling on the motion to dismiss Plaintiff's remaining § 1983 claims until Plaintiff amends her complaint, as directed herein. Plaintiff must amend her complaint by October 4, 2013, or this claim will also be dismissed.

**SO ORDERED**, this the 23rd day of September, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr