**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**MAKAYLA MARX,**

      Plaintiff,

v.                                                          Civil Action No. 7:12-CV-92 (HL)

**GEORGIA       DEPARTMENT       OF
CORRECTIONS,  WARDEN  WILLIAM
DANFORTH, Individually and in his
Official    Capacity,    and    DEPUTY
WARDEN CALVIN ORR, Individually
and in his Official Capacity**,

      Defendants.

## ORDER

Before the Court are Defendants' Motions to Dismiss Plaintiff's Second
and Third Amended Complaints (Docs. 28 and 35). Because a previous order
(Doc. 33) from this Court granted Defendants' motion in part and dismissed
Plaintiff's other claims, her sole remaining claims are those brought under 42
U.S.C. § 1983 against Defendants William Danforth ("Danforth") and Calvin Orr
("Orr") in their individual capacities. For the reasons stated below, Defendants'
motions to dismiss are granted and Plaintiff's case is dismissed.

## I.    MOTION TO DISMISS STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a
complaint must contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible if its factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. Twombly, 550 U.S. at 556.

In ruling on a motion to dismiss, the court must accept "all well-pleaded facts…as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, this tenet does not apply to legal conclusions in the complaint. Iqbal, 556 U.S. at 679. A court must dismiss the complaint if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Executive 100, Inc. v. Martin County, 992 F.2d 1536, 1539 (11th Cir. 1991) and Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed.2d 939 (1946)). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v.

<u>Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002). The court may not "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

## II.  FACTUAL BACKGROUND

In light of the Court's duty to construe the factual allegations in the complaint in favor of Plaintiff, the Court finds a slight clarification of the record is necessary. After the Court ordered Plaintiff to amend her complaint to answer specific questions that would assist the Court in ruling on the § 1983 claims, Plaintiff filed her Third Amended Complaint (Doc. 34). Thus, the Third Amended Complaint, which does not raise any new claim, will now govern this case along with the Second Amended Complaint (Doc. 14).

Plaintiff's allegations are that the Georgia Department of Corrections ("GDOC") hired her on February 16, 2006, to work as a corrections officer at Valdosta State Prison. She was diagnosed with post-traumatic stress disorder in February 2008, and her medical condition prevented her from working with difficult, aggressive, or isolated prisoners. Plaintiff requested accommodations from GDOC in her work as a corrections officer and asked to be assigned to perimeter duty, tower duty, or duty in the prison's front office. (Doc. 13, ¶¶10-14; Doc. 34, ¶¶1-2). Although temporarily given modified duty, Plaintiff was frequently questioned by Deputy Warden Orr about her health condition, appointments with medical providers, the duration of her illness, and similar

topics. Orr also accused Plaintiff of poor job performance and, on one occasion in January 2010, claimed she had abandoned her job post to smoke. (Doc. 13, ¶¶13-14, 27-30, 32-34). Some of Plaintiff's medical records were disseminated to co-workers, and these records became topics of discussion among her co-workers. (Doc. 13, ¶36; Doc. 34, ¶5).

Plaintiff brought her predicament to the attention of Orr's superiors, but her efforts backfired. When Plaintiff verbally complained to Warden Danforth, he supported Orr, and a letter of complaint filed with Danforth in February 2010 was equally fruitless. Danforth and Orr refused to accede to Plaintiff's requests for indefinite modified duty. After Plaintiff began complaining about both Orr and Danforth, an investigation was begun, but the investigatory interview held in June 2010 was calculated to intimidate Plaintiff. Plaintiff does not allege that Danforth or Orr participated in this interview in any way.[1] However, following Plaintiff's repeated complaints, Danforth and Orr reassigned her to work in prison dormitories where female employees, whether disabled or not, were not regularly assigned because of the volatile nature of the inmates. To protect her physical and mental health, Plaintiff chose to resign from her job. (Doc. 13, ¶¶28, 31, 35, 38-39; Doc. 34, ¶4).

---

[1] After the Court ordered Plaintiff to amend her complaint to specifically state whether Danforth or Orr were involved in the interview, Plaintiff's Third Amended Complaint omitted any reference to the interview whatsoever. The Court therefore disregards this interview for purposes of analyzing Plaintiff's remaining claims.

Other employees at Valdosta State Prison similarly situated to Plaintiff received better treatment than she did. Other disabled employees enjoyed uninterrupted time on modified duty, but when Plaintiff inquired about these positions, her requests were ignored. Orr did not repeatedly question other disabled employees about the status of their health, doctor's visits, or when they could return to regular work assignments. Finally, no other female employee, whether suffering a disability or not, was made to work in the prison dormitories housing the volatile inmates. (Doc. 13, ¶¶14, 26, 37; Doc. 34, ¶¶2-4).

Seeking redress, Plaintiff brought this lawsuit in July 2012, naming as defendants Georgia Department of Corrections; Warden William Danforth; and Deputy Warden Calvin Orr. Now that Plaintiff's other claims have been dismissed, all that remains is her allegation that Danforth and Orr in their individual capacities violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff seeks relief under 42 U.S.C. §§ 1983 and 1988. (Doc. 13, ¶44).

## III.   DISCUSSION

In her § 1983 count, Plaintiff alleges that Danforth and Orr in their individual capacities violated her rights under the Equal Protection Clause of the Fourteenth Amendment by first discriminating against her on the basis of her disability and then retaliating against her when she complained. Defendants

move to have Plaintiff's suit dismissed under the qualified immunity doctrine. "The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a certain degree of protection only when exercising powers that legitimately form a part of their jobs." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266-67 (11th Cir. 2004). To obtain qualified immunity, the defendant bears the initial burden of proving that he committed the allegedly unconstitutional act while performing a "discretionary function" of his office. Id. at 1263-64. If the action occurred as part of a discretionary function, then the burden shifts to the plaintiff to overcome qualified immunity. Id. at 1264.

The Court must first determine whether the alleged actions of Danforth and Orr were discretionary functions of their offices. There are two prongs in the Court's discretionary function analysis, for it must ask if "the government employee was (a) performing a job-related function (that is, pursuing a job-related goal), (b) through means that were within his powers to utilize." Id. at 1266. Under the first prong, the Court does not inquire into whether the purpose, manner, extent, circumstances, or motivation for the action were valid, but only whether the action was related to the defendant's job. Id. The Court must ask whether the action, if it had been done for a proper purpose, "would have been within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). The

second prong of the analysis directs the Court to determine whether the official was exercising his lawful authority using an authorized means. That is, both the power and the means of exercising that power must fall within the official's job description. Holloman, 370 F.3d at 1266-67 (providing, as an example of unauthorized means, a teacher who instilled civic virtue in her students by requiring them to join the military or encouraged altruism by demanding they redistribute their wealth to other students).

Both Danforth and Orr have shown that the actions alleged by Plaintiff fall within the discretionary functions of their jobs. Considering Danforth first, the alleged facts show that he was a warden at Valdosta State Prison. Although Plaintiff told Danforth about how Orr was treating her, Danforth dismissed her complaints and chose not to discipline Orr. Danforth and Orr subsequently transferred Plaintiff to work in a dormitory to which female employees were not typically assigned. (Doc. 13, ¶31). Making personnel and disciplinary decisions certainly falls within Danforth's discretionary authority as a prison warden. Moreover, the specific means by which Danforth exercised that authority— judging the merits of Plaintiff's complaint, declining to punish Orr, reminding Plaintiff she was not the only employee in an uncomfortable situation, assigning her to new duties—were consistent with his job's requirements. *See* Sims v. Metro. Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992) (observing that "the

consideration of complaints" and "the administration of discipline" were within the discretionary authority of the defendant supervisor at the county department of community affairs). Danforth has met his burden of showing his actions were within the discretionary functions of his office.

Turning next to Orr, his actions were also discretionary functions of his office as they were generally consistent with what would be required of a deputy prison warden. Plaintiff alleges that Orr frequently inquired into her medical condition; asked when she would be better; wanted to know about her therapist and counseling appointments; assigned her to positions in the prison that had not normally been given to women; and accused her of poor work performance and abandoning her duties to smoke. Setting aside any inquiry into the purpose and motivation for this behavior, Orr's actions were in keeping with the authority of his position and involved authorized means. The discretionary functions of a deputy prison warden would properly include re-assigning subordinates to new tasks; inquiring into the status of an employee's health when the employee had received modified duty work; and confronting subordinates about poor work and dereliction of duty.

Briefly addressing Orr's connection to the alleged dissemination of Plaintiff's medical records is necessary. As the complaint originally stated, "In April 2010, a copy of Plaintiff's doctor and therapist report was provided to

Plaintiff's co-worker in violation of her privacy. Plaintiff's disability became a constant discussion with Defendant Orr and other employees at the prison." (Doc. 13, ¶36). Uncertain from Plaintiff's use of the passive voice as to whom she alleged was responsible for releasing her medical information, this Court ordered Plaintiff to amend her complaint to specifically allege whether Danforth or Orr had released the records. (Doc. 33, p. 15). Her amendment stated the following: "While enduring this ongoing harassment, Plaintiff discovered that her medical records were provided to coworkers. Plaintiff knew that Defendant Orr had access to her records as a result of her requests for reasonable accommodation and believes that this was further designed to harass and intimidate Plaintiff." (Doc. 34, ¶5).

Such an allegation does not warrant a deduction that Orr is responsible for releasing the records. *See* Oxford Asset Mgmt., 297 F.3d at 1188 (noting that "unwarranted deductions of fact…will not prevent dismissal"). Plaintiff only alleges 1) that her medical records were released to co-workers and 2) that Orr had access to the records. Presumably other people had access as well. Plaintiff was invited to unequivocally allege that Orr took and released the records, but she has not done so. Thus, the Court finds that Plaintiff has not offered a well-pleaded allegation that Orr disseminated her medical records and does not find it

necessary to determine whether such an action would have been within the discretionary functions of Orr's office.

Because Danforth and Orr have carried their burden of showing the allegedly unconstitutional acts were performed as part of the discretionary functions of their offices, the burden now shifts to Plaintiff. To overcome qualified immunity, a plaintiff must be able to show 1) that the defendant violated one of the plaintiff's federal constitutional or statutory rights and 2) that the right was well-established when the violation occurred. Holloman, 370 F.3d at 1264. Plaintiff alleges that Danforth and Orr, in violation of the Equal Protection Clause of the Fourteenth Amendment, discriminated against her on the basis of her disability and then retaliated against her when she complained of the discrimination. Because Plaintiff cannot show that either Danforth or Orr violated her constitutional rights, her § 1983 claims must be dismissed.

Although Plaintiff describes Danforth and Orr as violating her equal protection rights by mistreating her on the basis of her disability, the Court finds this characterization to be unsupported by the factual allegations. The Fourteenth Amendment's Equal Protection Clause generally requires government entities to treat similarly situated persons alike. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006). In the government employment context, the traditional equal protection claim alleges the plaintiff "was discriminated against

10

on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin." Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 594-95, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) and Sweet v. Sec'y Dep't of Corr., 467 F.3d 1311, 1318-19 (11th Cir. 2006)). If, instead of alleging "discrimination against a protected class or on account of membership in a particular group," the plaintiff alleges she "has been treated differently from others similarly situated for arbitrary or irrational reasons," then the plaintiff is alleging a "class of one" equal protection claim. Id. (citing Engquist, 553 U.S. at 595-97 and Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009)).

Reviewing Plaintiff's § 1983 claim based on equal protection violations under the Iqbal and Twombly standards, the Court finds that the factual allegations of her complaint state a class-of-one claim. Although Plaintiff broadly alleges that Danforth and Orr engaged "in a pattern or practice…to discriminate against disabled individuals, harass disabled individuals and retaliate against said parties," (Doc. 13, ¶9), the Court may not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Judged according to Plaintiff's own factual allegations, Plaintiff was the only disabled employee who suffered discrimination at the prison. Only Plaintiff was denied the opportunity to

work for an indefinite period in modified-duty assignments, positions "that were typically provided to individuals with physical disabilities." (Doc. 34, ¶2). Only she was pestered with questions about her medical treatment, the state of her health, and when she could return to normal duties. (Doc. 34, ¶3; Doc. 13, ¶14, 27-30). Only she had to work in the dormitories housing volatile inmates that were typically not assigned to female employees, whether disabled or not. (Doc. 34, ¶4). Nor does Plaintiff allege Danforth or Orr ever communicated in writing or conversation animus towards her because of her disability. Thus, far from indicating Danforth and Orr discriminated and retaliated against Plaintiff because she belonged to the class of employees suffering from physical disabilities, the factual allegations show they treated her differently from similarly situated employees, whether the employees were similar in having a disability or being female. Plaintiff has stated a class-of-one equal protection claim, not a claim based on membership in an identifiable or protected class.

Qualified immunity shields Danforth and Orr from Plaintiff's class-of-one discrimination claim because the Supreme Court of the United States has unequivocally held "that the class-of-one theory of equal protection does not apply in the public employment context." Engquist, 553 U.S. at 598. The plaintiff in Engquist had worked at the Oregon Department of Agriculture before being effectively laid off for "arbitrary, vindictive, and malicious reasons." Id. at 595. Her

supervisors treated her differently than similarly situated employees. In considering the class-of-one claim, the Supreme Court emphasized the necessity in constitutional analysis of distinguishing "between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its internal operation." Id. at 598 (internal quotation and citation omitted). The government's employment decisions are not subject to the same level of equal protection scrutiny as "when it brings its sovereign power to bear on citizens at large." Id. at 599.

As the Court further explained, when the government acts as an employer it has a significant interest "in achieving its goals as effectively and efficiently as possible." Id. (quoting Waters v. Churchill, 511 U.S. 661, 675, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion)). Recognizing that "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify," the Supreme Court insisted that "broad discretion" must be afforded personnel decisions by government employers. Id. at 604-05. Thus, the Equal Protection Clause does not forbid a government entity from treating "an employee differently from others for a bad reason, or for no reason at all," and for the Court to hold otherwise would be "contrary to the concept of at-well employment." Id. at 606.

In sum, Danforth and Orr are entitled to qualified immunity because Plaintiff has been unable to show they violated a constitutional right that was clearly established at the time they allegedly discriminated against her. The Equal Protection Clause does not protect Plaintiff from the class-of-one discrimination she has alleged when such discrimination occurs in the public employment context. During the events of concern here, Plaintiff was a public employee for the Georgia Department of Corrections at a state prison. The Equal Protection Clause does not protect Plaintiff from employment decisions, however irrational, by Danforth and Orr that treated her differently than similarly situated employees at the prison. Because Danforth and Orr are entitled to qualified immunity, Plaintiff's § 1983 claim of discrimination is dismissed.

Defendants also receive qualified immunity from Plaintiff's § 1983 claim of retaliation. "The right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation." Ratliff v. DeKalb County, Ga., 62 F.3d 338, 340 (11th Cir. 1995) (emphasis in original). Therefore, because Plaintiff cannot carry her burden under the qualified immunity standard, her relation claim is dismissed.

14

## IV.     CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motions to Dismiss (Docs. 28 and Doc. 35). Because Plaintiff's § 1983 claims against Danforth and Orr in their individual capacities were her sole remaining claims, her case is dismissed in its entirety.


**SO ORDERED**, this the 26th day of November, 2013.


*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**


scr